UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GAY D. THOMPSON,
        Plaintiff,

Case No.  1:14-CV-0464

v.

HON. PAUL L. MALONEY

COMMISSIONER OF SOCIAL
SECURITY
        Defendant.
_____/

## OPINION AFFIRMING THE COMMISSIONER'S DECISION

This is a social security action brought under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking

judicial review of a final decision of the Commissioner of the Social Security Administration

(Commissioner). Plaintiff Gay Thompson seeks review of the Commissioner's decision denying her

claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and

XVI of the Social Security Act.

Section 405(g) limits the Court to a review of the administrative record, and provides that if the

Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner

has found that Plaintiff is not disabled. The Court has thoroughly reviewed the record and the filings by

the Plaintiff and the Commissioner and, for the reasons stated below, concludes that the

Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's

decision is affirmed.

### STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the

record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See, e.g., Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d

2

at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was born on November 16, 1963.  She was 46 years old on the date of her alleged onset of disability on April 19, 2010. (A.R. 78). Plaintiff obtained a GED and throughout her career was employed as a paper production worker, sewing machine operator, shipping and receiving clerk, and home health aide. (A.R. 42–43). On May 5, 2010, Plaintiff applied for Title II and XVI benefits, alleging she was disabled due to a benign brain tumor. (A.R. 78, 151–61). On December 8, 2010, Plaintiff's application was denied. (A.R. 100–08).  Thereafter, Plaintiff requested a hearing before an Administrative Law Judge (ALJ) and on July 23, 2012, Plaintiff appeared at a hearing before ALJ James Prothro. Both Plaintiff and Susan Rowe, an impartial vocational expert, testified (A.R. 30). On November 5, 2012, the ALJ issued an unfavorable decision to Plaintiff. Plaintiff sought review before the Social Security Appeals Council, and on August 14, 2013, Plaintiff submitted new evidence to the Appeals Council. Plaintiff's request for review, however, was denied on February 22, 2014. Plaintiff next commenced the instant action.

Plaintiff's insured status expired on December 31, 2010. (A.R. 78); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ALJ'S DECISION

A claimant must prove that she suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than twelve

months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir.

1990). To aid ALJs in applying the above standard, the Commissioner of Social Security has

developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five step sequential process" for claims of disability. First [a] Plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, [a] Plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if [a] Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, [a] Plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the Plaintiff's impairment does not prevent her from doing her past relevant work, [a] Plaintiff is not disabled. For the fifth and final step, even if the Plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that [the] Plaintiff can perform, Plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted);

*see also* 20 C.F.R. §§ 404.1520(a-f).

The Plaintiff has the burden of proving the existence and severity of limitations caused by her

impairments and that she is precluded from performing past relevant work through step four. *Jones v.

Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the

Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the

claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

The ALJ determined Plaintiff's claim failed at the fifth step of the evaluation. Following the five

steps, the ALJ initially found that Plaintiff had not engaged in substantial gainful activity since April 19,

4

2010, the Plaintiff's onset day (A.R. 16). Second, the ALJ determined that Plaintiff had the following severe impairments: status post surgery for frontal surface brain tumor (benign), low back pain, left lower extremity radiculopathy with pain, diffuse myalgias, diabetes mellitus, obesity, and depression. (A.R. 16). At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (A.R. 17).

With respect to Plaintiff's residual functional capacity (RFC), the ALJ determined that Plaintiff retained the capacity to perform light work subject to the following limitations:

> [S]he is limited to simple tasks and work with occasional contact with [the] general public, coworkers, and supervisors.

(A.R. 18). Continuing the analysis, the ALJ also noted that Plaintiff was unable to perform any past relevant work. (A.R. 22).

At the fifth step, the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on the issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJ's routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant

5

can perform, her limitations notwithstanding. Such was the case in the instant matter. Considering the Plaintiff's age, education, work experience, and RFC, the ALJ determined there to be significant jobs in the regional economy that the Plaintiff would be able to perform. (A.R. 23). Citing the vocational expert's testimony, the ALJ found that the Plaintiff was capable of performing the requirements of an assembler, cafeteria attendant, and mail clerk which, in sum, amounted to twenty thousand jobs in the regional economy. (A.R. 23, 72). This represents a significant number of jobs. *See Hall v.* Bowen, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Thus, following the five steps, the ALJ determined Plaintiff was not disabled within the meaning of the Act.

## ANALYSIS

Plaintiff raises several issues, and sub-issues, on appeal regarding the ALJ's decision:

I.      The ALJ's Decision was not based on substantial evidence because he failed to give proper weight to the findings and opinion of Plaintiff's treating physician, as required by 20 C.F.R. §§ 404.1527(d) and 416.927(d).

    A.      The ALJ did not state what weight he gave the opinion of Plaintiff's treating physician and did not give it controlling weight.

    B.      The ALJ failed to address factors such as, but not limited to, the length of treatment, frequency of examination, and nature and extent of the treatment relationship, when he rejected the findings and opinion of Plaintiff's treating physician, as required by 20 C.F.R. §§ 404.1527(d) and 416.927(d).

    C.      The ALJ erred as a matter of law by giving greater weight to the opinion on a non-examining psychologist over the opinions of the treating psychiatrists.

6

II.     The ALJ committed reversible error by not addressing the Plaintiff's headaches. Had [he] properly followed the law, he would have concluded that [Plaintiff's] headaches constitute a "severe impairment."

III.    The ALJ's residual functional capacity (RFC) findings (including his credibility findings) are not supported by substantial evidence under 20 C.F.R. §§ 404.1520, 416.920 and 416.945 and SSR 98-6p.

      A.     The RFC and the hypotheticals to the Vocational Expert failed to include limitations well documented in the record, warranting reversal.

      B.     The ALJ committed reversible error by failing to provide specific and/or sufficient rational [sic] for rejecting the claimant's pain relief, as required by SSR 96-7p.

      C.     The ALJ did not follow the proper legal standard when he analyzed the opinion of therapist Laurie Rudolph, MA, LPC, CAADC, NCC, as required by 20 C.F.R. 404.1514(d); 416.913(d) and SSR 06-03p.

(Plaintiff's Brief, pp. iii).  The Court will consider each issue in turn.

**1. Dr. Saith's Statements Do Not Violate the Treating Physician Doctrine**

Plaintiff's first issue, and related sub issues, argues a principle commonly known as the "treating physician doctrine" was violated by the ALJ in several ways. Specifically, the Plaintiff argues: in developing Plaintiff's RFC, the ALJ did not describe the weight given to an opinion worksheet filled out by Dr. Marguerite Saith; Dr. Saith's opinion was entitled to controlling weight in developing the RFC; the ALJ erred in his explanation for discounting Dr. Saith's opinion; and the ALJ erred in applying greater weight to the opinion of a non-examining source. (Plaintiff's Brief, pp. 10–14).

**a. Doctor Saith's Worksheet and the ALJ's Discussion**

On September 4, 2012, Dr. Marguerite Saith filled out a worksheet asking Dr. Saith's opinion regarding Plaintiff's ability to perform certain work-related activities. The form listed an activity which

was followed by a number of boxes asking for, among other things, the maximum Plaintiff could lift, the

time Plaintiff would need to lie down during the work day, whether and for how long the Plaintiff would

need to alternate between positions, and what type of environmental conditions affected Plaintiff

considering Plaintiff's limitations. (A.R. 694-95).  Based on the boxes marked by Dr. Saith, Dr. Saith

concluded that:

1.  Plaintiff could lift and carry a maximum of ten pounds occasionally and less than ten pounds frequently.[1]

2.  Plaintiff, with normal breaks, could stand and walk for a maximum of less than two hours in a workday.

3.  Plaintiff could sit, with normal breaks, for a maximum of about four hours in a workday.

4.  It was uncertain whether Plaintiff had to periodically alternate between sitting, standing, and walking to relieve discomfort, or if she did how often and for how long those shifts were necessary.

5.  Plaintiff needed to be able to shift at will from a sitting position to a standing/walking position.

6.  Plaintiff needed to lie down for twenty-five percent or more of a workday.

(A.R. 694). When asked for medical findings in support of the above limitations, Dr. Saith wrote: "left

lumbar radiculopathy secondary to left L5-S1 forminal stenosis." (A.R. 694). Dr. Saith further opined

that Plaintiff could rarely (or less than 5% of the day) twist, stoop or bend, crouch, and climb stairs and

could never climb ladders. She also noted Plaintiff's impairment affected her ability to reach and push

or pull. Dr. Saith again referenced the above mentioned medical findings in support. (A.R. 695). Dr.

---

[1]For purposes of the worksheet, "occasional" meant no more than 1/3 of an eight hour workday and "frequently" meant 1/3 to 2/3 of an eight hour day. (A.R. 694).

Saith's opinion further noted that while Plaintiff required no restrictions regarding extreme heat, Plaintiff had to avoid moderate exposure to extreme cold, high humidity, fumes, odor, dusts, gasses, perfumes, soldering fluxes, solvents, cleaners, and chemicals. Dr. Saith referenced Plaintiff's benign tumor and its removal in support of the restrictions and finally opined that Plaintiff's impairments would cause Plaintiff to miss more than four days of work a month. (A.R. 695).

In explaining his RFC determination, the ALJ wrote, in relevant parts:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.
>
> ...
>
> Due to positive MRI results of the claimant's lumbar spine (left foraminal disc protrusion at L5-S1 and severe left neuroforaminal narrowing), she underwent physical examination in June 2011. The claimant weighed 201 pounds. Dr. Wiggins noted that the claimant was in no acute distress. Examination of heart and lungs was negative. Her gait and station was normal. Motor strength of the upper and lower extremities was 5/5, noting however that the claimant was a "poor" participant, giving way during the examination.
>
> ...
>
> The June 2012 MRI of the brain showed no acute findings or significant change dating back to November 2011 (Ex 15F/17). In January 2012, surgery consult was suggested for her low back pain, but the claimant preferred to get her headaches controlled (Ex 17F/10). In July 2012, the evidence shows the claimant continue[d] taking Ultram for her low back pain, but no new medicine for headache (Ex 17F/3).
>
> ...
>
> On September 4, 2012, Dr. Saith indicated that the claimant's lumbar radiculopathy and foraminal stenosis limited her to no lifting more than 10 pounds. Dr. Saith was uncertain with regard to how long the claimant could stand, walk, and sit before she must change positions. However, Dr. Saith was certain that the claimant could stand and walk less than two hours during eight hours but sit less about four hours during eight hours. Dr. Saith added that the claimant's impairments would cause her to be absent from work more than four days per month (Ex 19F).
>
> ...

9

> The undersigned does not accept the debilitating limitations from this physical assessment because there is no supporting evidence that the claimant's L5 radiculopathy is so severe that she reclines 25 percent of the day.  Moreover, the claimant had deferred surgery consult on her back while her headaches were bad.  There is no sign that the back is disabling her to that extent.  Moreover, the regulations provide that the final responsibility for deciding such issues as what an individual's residual functional capacity is and whether the residual functional capacity would prevent an individual from returning to his work is an issue reserved to the Commissioner (Social Security Ruling 96-5p).

(A.R.18, 20–21). After reviewing the record and the filings by the parties, the Court concludes that the ALJ had substantial evidence for his treatment of Dr. Saith's opinion.

### b. The Treating Physician Doctrine

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2

10

(6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235

n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir.

1994).

   If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give

good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the

evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers

the weight the adjudicator gave to the treating source's medical opinion and the reasons for that

weight." This requirement "ensures that the ALJ applies the treating physician rule and permits

meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social

Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not

well-supported by any objective findings and are inconsistent with other credible evidence" is, without

more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at

376-77.

   If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must

still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the

following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature

and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion

with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors.

*Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these

factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his

assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v.*

11

*Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Plaintiff argues the ALJ erred in the above analysis, but the Court does not so find.

### c. Dr. Saith's September 2012 Opinion Is Not Entitled to Controlling Weight.

Plaintiff argues that Dr. Saith's opinion, specifically the doctor's opinion that Plaintiff would be required to lie down twenty-five percent of the day, is entitled to controlling weight under the treating physician doctrine. The ALJ decided not to accept Dr. Saith's opinion,[2] citing in part to Plaintiff's MRI results and Plaintiff's decision to put off a surgical consult. (A.R. 21). Furthermore, as the ALJ noted, issues of disability and RFC are ultimately reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d); *Allen v. Commissioner*, 561 F.3d at 652.

If a treating physician "submits an opinion on an issue reserved to the Commissioner – such as whether the claimant is disabled, or unable to work, the claimant's RFC, or the application of vocational factors – [the ALJ's] decision need only 'explain the consideration given to the treating sources opinion.' The opinion, however, 'is not entitled to any particular weight.' " *Curler v. Commissioner*, 561 F. App'x 464, 471 (6th Cir. 2014) (quoting *Johnson v. Commissioner*, 535 F. App'x 498, 505 (6th Cir. 2013) and *Turner v. Commissioner*, 381 F. App'x 488, 493 (6th Cir. 2010)).

Dr. Saith's predictions of how often Plaintiff would likely miss work or need to lie down, was conjecture, not a medical opinion. *See Murray v. Commissioner*, 1:10-v-97, 2011 WL 4346473, at * 7 (W.D. Mich. Aug. 25, 2011) (collecting cases). In addition, the underlying progress notes did not

---

[2]Contrary to Plaintiff's assertion, the ALJ did note the weight he gave Dr. Saith's opinion, which was none. (*See* A.R. 21. ("The undersigned *does not accept* the debilitating limitations from this physical assessment.") (emphasis added)).

support the level of restriction Dr. Saith suggested in the worksheet responses. The Sixth Circuit has

consistently held that inconsistencies between proffered restrictions and the underlying treatment

records are good reasons for discounting a treating source's opinions. *See e.g., Hill v. Commissioner*,

560 F. App'x 547, 549-50 (6th Cir. 2014); *Fry v. Commissioner*, 476 F. App'x 73, 75-76 (6th Cir.

2012). In considering the statements of Dr. Saith as well as the case law above, the Court concludes

that the statements are those properly in the province of the Commissioner, and therefore are not

entitled to controlling weight.

### d. The ALJ Adequately Considered the Relevant Factors in Assigning a less than Controlling Weight to Dr. Saith's Opinion.

Moreover, the ALJ did not err regarding the factors set forth in 20 C.F.R. § 404.1527 and §

416.927. While the Plaintiff would apparently have the ALJ address each factor individually, Plaintiff

points to no case law requiring an ALJ to perform such an analysis. Under sections 404.1527(c) and

416.927(c), the ALJ is only required to "consider" the factors. The regulation does not require a

"factor-by-factor" analysis. *See Francis v. Commissioner*, 414 F. App'x 802, 804–05 (6th

Cir.2011); *see also Kostovski–Talevska v. Commissioner*, No. 5:13–cv–655, 2014 WL 2213077,

at *9 (N.D.Ohio May 28, 2014) (collecting cases); *Mayfield v. Commissioner*, No. 1:12–cv–912,

2014 WL 1341923, at * 11 (W.D.Mich. Mar.31, 2014); *Owens v. Commissioner*, No. 1:12–cv–47,

2013 WL 1304470, at *2 (W.D.Mich. Mar.28, 2013).

The record demonstrates that the ALJ recognized his responsibility under the regulations, noting

that he had to consider opinion evidence in accordance with, among other things, 20 C.F.R. §

404.1527. (A.R. 18). The ALJ also adequately considered the factors regarding the opinion evidence,

13

and specifically considered Dr. Saith's opinion against the record as a whole. (A.R. 22). The ALJ found that the proffered restrictions listed in Dr. Saith's statement to Plaintiff's attorney were not well supported by objective evidence and by Plaintiff's decision to put off a surgical consult on her back. For example, Dr. Saith's treatment notes repeatedly show Plaintiff had a normal musculoskeletal system, motor functioning, sensation and reflexes (A.R. 416-19). The notes also stated that even with the disc protrustion and narrowing, Plaintiff had no dysfunction in motor functioning and normal reflexes (A.R. 407, 411). The ALJ determined the record did not support Dr. Saith's opinion, and in doing so considered one of the factors he was required to consider. In this, the Court finds no error.

### e.  The ALJ Did Not Err in Assigning Weight to Dr. Douglass' Opinion.

Plaintiff's next argument, that the ALJ gave too much weight to the opinion of Dr. Glen Douglass, does not provide a basis for disturbing the Commissioner's decision. Plaintiff argues that it was error to give great weight to Dr. Douglass' opinion because the record before the medical consultant during December, 2010, did not include developments in Plaintiff's condition beyond her brain tumor surgery. (*See* Plaintiff's Brief, pp. 13). This is not sufficient to establish error. Given the delay inherent in the administrative review process, few, if any cases, will present a static medical record from a date before the decision on initial review through the date of the ALJ's decision. It is patent that the ALJ understood that Dr. Douglass gave his opinion on the basis of the medical record as it existed in December 2010. (A.R. 20). The ALJ is responsible for weighing conflicting evidence. *See Buxton v. Halter*, 246 F.3d 762, 775); *see also Reynolds v. Commissioner*, 424 F. App'x 411, 414

14

(6th Cir.2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.").

The ALJ was free to consider Dr. Douglass' opinions and determine what weight, if any, they should be given. "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation .'" *Cobb v. Commissioner*, No. 1:12–cv–2219, 2013 WL 5467172, at *5 (N.D.Ohio Sept.30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2) (i), 416.927(e)(2)(i)); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir.1994); *see also Brooks v. Commissioner*, 531 F. App'x 636, 642 (6th Cir.2013) ("[I]n appropriate circumstances, opinions from State agency medical and psychological consultants ... may be entitled to greater weight than the opinions of treating or examining sources."). The ALJ found that Dr. Douglass' opinion that Plaintiff was capable of performing light exertional work  was persuasive because it was consistent with the record demonstrating that Plaintiff's problems regarding her brain tumor had resolved, and that Plaintiff's lumbar spine disc protrusion and neuroforaminal narrowing was not likely to limit the claimant's work activities further. (A.R. 20). The Court finds no error.

Accordingly, substantial evidence exists to support the ALJ's decision ascribing weight to certain medical sources. Plaintiff's first issue fails.

**2.  The ALJ Did Not Err at Step 2 By Not Listing Plaintiff's Headaches as "Severe."**

Plaintiff next argues that the ALJ did not consider Plaintiff's headaches when he considered Plaintiff's severe impairments at step 2. (Plaintiff's Brief, pp. 14). Plaintiff argues that she experienced

constant headaches after surgery to remove her benign tumor, that she experienced a range of symptoms in connection to her headaches, and repeats her claim that the ALJ should have addressed her headaches, arguing that her headaches were severe.

A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir.1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Maziarz*, 837 F.2d at 244. An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id*. "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir.2008). Here, the ALJ found that Plaintiff suffered from the severe impairments of: status post surgery for frontal surface brain tumor (benign),[3] low back pain, left lower extremity radiculopathy with pain, diffuse myalgias, diabetes mellitus, obesity, and depression. (A.R. 16). The ALJ's failure to include Plaintiff's other claimed conditions as severe impairments at step two is legally irrelevant. Accordingly, Plaintiff's error will be denied.

### 3.  There is Substantial Evidence to Support the ALJ's RFC Determination .

Plaintiff next presents a myriad of arguments that all go towards the ALJ's RFC determination.

---

[3]Plaintiff does not state how this impairment is different than the headaches she complains of. In any event, as noted, to the extent the ALJ failed to include Plaintiff's headaches, it is legally irrelevant.

After a review of Plaintiff's brief, the Court concludes that Plaintiff argues the ALJ's RFC determination was in error because: (1) it failed to include certain limitations; (2) the ALJ improperly found certain statements by Plaintiff to be less than wholly credible; and (3) the ALJ improperly assessed the opinion of Plaintiff's therapist, Laurie Rudolph. (*See* Plaintiff's Brief, pp. 13–16).

### a. The ALJ Considered Plaintiff's Limitations

Plaintiff first argues that the ALJ improperly failed to consider all her impairments in determining her RFC. Specifically, Plaintiff states that the medical evidence demonstrates she cannot perform the RFC. Plaintiff cites to an MRI of her back, and the fact that "she cannot bend, stoop twist or crawl up to 1/3 of a day," that "the ALJ did not consider the effect of her headaches" and her "blurred vision, depression and crying spells." (Plaintiff's Brief, pp. 16). Plaintiff's arguments challenging the ALJ's factual finding regarding her RFC do not provide a basis for disturbing the Commissioner's decision.

A claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling 96-8P, 1996 WL 374184 at

*1 (Social Security Administration, July 2, 1996); *see also, Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 116 (6th Cir., Nov. 18, 2010). RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir.2007). At this point, the burden remains on the Plaintiff to demonstrate a disability. 42 U.S.C. § 423(d)(5)(A).

After a review of the record, the Court finds that, contrary to Plaintiff's assertion, the ALJ adequately considered the limitations Plaintiff complains of. The ALJ noted that in making the RFC he

17

had "considered *all symptoms* and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." (A.R. 18) (emphasis added). In the following pages, it is shown the ALJ did just that, discussing Plaintiff's headaches (A.R. 19) and limiting Plaintiff to simple tasks involving occasional contact with others (A.R. 18). The ALJ also discussed Plaintiff's back pain (A.R. 19–2). As regard to Plaintiff's other statements, such as blurry vision and crying, the ALJ discounted them because he did not find Plaintiff's testimony to be credible (A.R. 22), and as such was not required to include them in his RFC determination. *See Irvin v. Soc. Sec. Admin.*, 573 F. App'x 498, 502 (6th Cir. 2014); (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993)). At bottom, the ALJ did consider the limitations Plaintiff alleges he did not, and Plaintiff points to no evidence by which the Court could conclude that the ALJ acted outside a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545. Accordingly, Plaintiff fails on this issue.

In a heading that is not further discussed in her brief, Plaintiff makes a related argument that the hypothetical question to the vocational expert (VE) was deficient. Plaintiff's challenge to the adequacy of the hypothetical question posed to the VE is a mere reformulation of her unsuccessful challenge to the ALJ's RFC determination. The ALJ found that Plaintiff's subjective complaints were not fully credible and that she retained the RFC for a limited range of light work. It is well settled that a hypothetical question to a VE need not include unsubstantiated limitations. *See Carrelli v. Commissioner*, 390 F. App'x 429, 438 (6th Cir.2010); *Gant v. Commissioner*, 372 F. App'x 582, 585 (6th Cir.2010) ("[I]n formulating a hypothetical question, an ALJ is only required to incorporate those limitations which [s]he has deemed credible."); *see also Justice v. Commissioner*, No.

12–3150, slip op. at 10 (6th Cir. Feb. 22, 2013). The ALJ's hypothetical question included all the limitations he found to be credible.

### b. The ALJ had Substantial Evidence Supporting His Credibility Determination Regarding Plaintiff.

Plaintiff next argues that the ALJ did not consider Plaintiff's persistent efforts to obtain pain relief for her headaches and back, as required by SSR 96–7p, and that he improperly discounted Plaintiff's credibility. As the introduction to SSR 96-7p notes, the regulations set out a two step process for the evaluation of subjective complaints, such as Plaintiff's. *See* 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must consider whether there is a medically determinable impairment that can be expected to produce the Plaintiff's pain or symptoms and, if so determined, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the Plaintiff's functioning. (*See id.*). The record reflects the ALJ undertook this analysis. (A.R. 18–19). Plaintiff argues, however, that the ALJ did not follow SSR 96-7 in finding Plaintiff was not credible at the second step. That ruling, in relevant part, states:

> In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements. Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and

19

persistent symptoms.

Titles II & Xvi: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's

Statements, SSR 96-7P (S.S.A. July 2, 1996). Plaintiff, however, does not point the Court to

anywhere in the medical record demonstrating Plaintiff's attempts to seek treatment and to follow that

treatment other than mentioning, without citing the record, MRI results and noting that notes from a

physician "do not state that surgery would cure Plaintiff." (*See* Plaintiff's Brief, pp. 16-17).

The record, however, demonstrates that the ALJ did consider Plaintiff's medical treatment for

pain. As found by the ALJ, Plaintiff sought treatment in an ER for severe headaches beginning in April

2010 (A.R. 17); she received an MRI for her low back pain on May 9, 2011. (A.R. 17). Further, the

ALJ noted that following her surgery to remove the tumor, Plaintiff said she took her medicine "as

prescribed, but she does not get much relief.  Norco sometimes relieves her headaches." (A.R. 19).

The ALJ also noted, however, medical evidence showed her complaints after surgery were controllable

with medication. (A.R. 19). From there, the ALJ noted that Plaintiff underwent two injections for back

pain in August 2011 (A.R. 20) and in July 2012, nearly a year later, Plaintiff was taking Ultram for her

back pain, but no new medications for her headaches. (A.R. 20). In sum, Plaintiff is incorrect that the

"ALJ's [d]ecision did not address her attempts at treatment and pain relief, except that she had tried

injections before surgery." Accordingly, Plaintiff's argument here fails.

Plaintiff raises a related argument (in this and the next portion of her brief) that the ALJ

mischaracterized her testimony from the administrative hearing in making his credibility determination.

Specifically, Plaintiff alleges that she said:

[S]he sometimes goes to her daughter's home so that her daughter can take care of her

20

> when she is not feeling well, which may be two or three times a week.  Some of her
> grandchildren live with her daughter.  Those visits are not purely social.  Similarly, she
> can cook only small meals on a very limited basis and has someone come to her home
> to clean and do yard work. She is not as functional as the ALJ's decision would
> indicate.

(Plaintiff's Brief, pp. 17). Plaintiff went on to argue the ALJ impermissibly engaged in a "cherry pick" of

the evidence to support his conclusion.

> In making his RFC determination, the ALJ noted:
>
> The evidence does not support the claimant's assertion of debilitating, intractable pain.
> The claimant testified that she takes her medicine as prescribed.  She said she does not
> do housework.  However, she has grandchildren and sees them several times a week.
> She goes to visit them.  She lives with her two grown sons.  She has a boyfriend and he
> pays her bills. She can cook meals. The claimant testified she sees a counselor on a
> weekly basis.

(A.R. 22). Plaintiff contends that the reasons cited by the ALJ in assessing her credibility

"mischaracterized" Plaintiff's testimony, and amount to a "cherry pick" from the record. Plaintiff's Brief

at p. 17.

After reviewing the record, the Court concludes that there is no compelling reason to disturb

the ALJ's credibility finding. *See Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001); *Casey*, 987

F.2d at 1234. The Court disagrees with Plaintiff's various characterizations of the ALJ's decision (e.g.,

cherry picking the evidence, and mischaracterizing the record). The ALJ discussed, at length, the

inconsistencies between Plaintiff's claims and other evidence of record. Plaintiff's alleged errors

essentially ask this court to re-weigh the evidence with respect to portions of Plaintiff's medical history

and then determine whether it agrees (or disagrees) with the ALJ's credibility determination as to that

particular event. In short, Plaintiff is asking this court to perform a *de novo* review of the record and

re-evaluate her credibility. It is beyond the scope of this Court's review to perform such a review. See *Jones*, 336 F.3d at 476; *Garner*, 745 F.2d at 387. Substantial evidence supports the ALJ's decision, which sets forth a reasonable explanation for discrediting Plaintiff's testimony regarding the severity of her medical condition and resulting limitations. *See Jones*, 336 F.3d at 476. The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision. *Willbanks*, 847 F.2d at 303. As the court explained in *Mullen v. Bowen*, 800 F.2d 535 (6th Cir.1986):

> The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen*, 800 F.2d at 545, *quoting Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984). Plaintiff's claim regarding the ALJ's credibility determination should be denied.

### 3. The ALJ Properly Considered the Opinion of Laurie Rudolph

Plaintiff's final claim is that the ALJ improperly applied Social Security Ruling 06-03p in considering the opinion of Plaintiff's therapist, Laurie Rudolph. Specifically, Plaintiff argues the ALJ should have given Ms. Rudolph's September 5, 2012, opinion greater weight in assessing Plaintiff's RFC.

On September 5, 2012, Ms. Rudolph filled out a form entitled "Mental Impairment Questionnaire (RFC & Listings)." (A.R. 697). Accompanying the form, Ms. Rudolph authored a letter which included Ms. Rudolph's opinion that Plaintiff would be unable to work and had experienced multiple periods of decompensation. (A.R. 696).

22

After noting that he "considered opinion evidence in accordance with the requirements of 20

CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and *06-3p*" (A.R. 18) (emphasis

added), the ALJ considered Ms. Rudolph's opinion:

> Regarding the nonmedical opinion in file, the claimant's counselor Ms. Rudolph, MA, LPC, CAADC, NCC, has indicated that the claimant's depression started with headaches and tumor removal.  Her depression increased and she no longer receives pleasure from bowling, dancing, attending concerts, camping and going on vacation. She stays in bed most of the time.  Ms. Rudolph opined that the claimant's physical pain exacerbates her depression and her depression intensifies her physical pain. Although the claimant is compliant with medications that address physical pain and depression, both disorders continued to worsen each other.  Nevertheless, the undersigned notes the evidence (x-rays and other imagings) does not document a progressive physical condition to support increase physical pain and limitation.
>
> Ms. Rudolph stated the claimant missed several counseling sessions for periods of three to eight weeks.  Ms Rudolph considered the missed session episodes of decompensation.  The undersigned notes that Ms. Randolph specified dates that the claimant did not attend counseling sessions.  The office visits at Family Health Center in Exhibits 14F and 15F show the claimant was able to attend doctor appointments. Furthermore, there is no evidence that the claimant required increased medication to do so.  Her mental status examinations were normal.  The claimant's mood was euthymic. The claimant indicated that her activities included reading, listening to music, and watching movies.  She lived alone and was sexually active.  She was not psychiatrically hospitalized during any one of the missed counseling sessions.
>
> The undersigned must consider that episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by adaptive functioning as manifested by difficulties in performing activities of daily living, maintaining social functioning, etc.  Episodes may require increased treatment or a less stressful situation or may be inferred from medical records showing significant alteration in medication or need for a structured psychological support system.  The term repeated episodes of decompensation of extended duration means three episodes within one year, or an average of once every four months, each lasting for at lest two weeks.  Indeed, missed counseling sessions does not fulfill the definition of episodes of decompensation.
>
> Ms Rudolph provided a functional assessment that is obviously exaggerated and not well supported.  For example, she said the claimant had "Marked" limitation in activities of daily living, but the evidence shows that claimant is living independently, manages her

23

affairs, and travels to her appointments.  Ms. Rudolph also indicated that claimant has Marked to Extreme limitations in concentration, persistence or pace.  This is also not consistent with medical reports and the claimant's statements that she manages her complex medications.  The claimant has made decisions regarding whether to have surgery and injections.  The claimant has been able to focus on these issues including planning future visits and treatment.  Furthermore, the claimant has grown children and 10 grandchildren.  Her family life is abundant and apparently positive for her.

Ms. Rudolph opined the claimant is unable to work and will continue to be unable to work, due to her recurrent depression and all the persistent symptoms associated with it (Ex 20F, 13F, 21F).  The undersigned does not accept Ms. Rudolph's opinions because her opinions are unsupported and Ms. Rudolph is not an acceptable medical source (Social Security Ruling 06-03p).

(A.R. 21-22).

The regulations require Plaintiff to present evidence from acceptable medical sources, such as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists to establish whether he has a medically determinable impairment. See 20 C.F.R. § 404.1513(a)(1)-(5). As a therapist, Ms. Rudolph's opinions are not those of an acceptable medical source under 20 C.F.R. § 404.1513. While her opinion can be considered as evidence from an "other" medical source, it is not entitled the weight given to the opinions of doctors. See 20 C.F.R. § 404.1513(d)(1) (evidence from "other" non-medical sources includes information from nurse-practitioners, physician's assistants, naturopaths, chiropractors, audiologists and therapists); *Shontos v. Barnhart*, 328 F.3d 418, 425–26 (8th Cir.2003) (nurse practitioner is not an "acceptable medical source" under § 404.1513(a), but can be considered as an "other" medical source under 20 C.F.R. § 404.1513(d)(1)); *Nierzwick v. Commissioner of Social Security*, 7 Fed. Appx. 358, 363 (6th Cir.2001) (physical therapist's report not afforded significant weight because the therapist is not recognized as an acceptable medical source).

Nevertheless, the SSA recognizes that opinions from other medical sources "are important and

24

should be evaluated on key issues such as impairment severity and functional effects, along with other

relevant evidence in the file." SSR 06–03p (Aug. 9, 2006). Specifically, SSR 06–03p requires an ALJ

to consider the opinions expressed by these "other" medical sources:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision in hearing cases and in the notice of determination (that is, in the personalized disability notice) at the initial and reconsideration levels, if the determination is less than fully favorable.
>
> ...
>
> Although the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from "acceptable medical sources," these same factors can be applied to opinion evidence from "other sources." These factors represent basic principles that apply to the consideration of all opinions from medical sources who are not "acceptable medical sources" as well as from "other sources," such as teachers and school counselors, who have seen the individual in their professional capacity. These factors include:
>
> • How long the source has known and how frequently the source has seen the individual;
> • How consistent the opinion is with other evidence;
> • The degree to which the source presents relevant evidence to support an opinion;
> • How well the source explains the opinion;
> • Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
> • Any other factors that tend to support or refute the opinion.

Titles II & Xvi:II & Xvi: Considering Opinions & Other Evidence from Sources Who Are Not

"Acceptable Med. Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental & Nongovernmen, SSR 06-03P (S.S.A. Aug. 9, 2006). Here, the ALJ's analysis was proper under SSR 06-03p. The ALJ expressly noted his responsibility under SSR 06-03p to consider Ms. Rudolph's opinion and spent considerable time doing so. In considering the opinion, the ALJ also considered several of the factors the ruling asks adjudicators to consider including the length of time Ms. Rudolph saw Plaintiff and the opinion's consistency with the record. The ALJ thoroughly documented his reasoning, and substantial evidence supports his decision. Accordingly, the Court finds no error here.

### 4. Plaintiff is Not Entitled to a Sentence Six Remand

As part of her request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence which was not presented to the ALJ. (A.R. 5, 703-82). The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination. This Court, however, is precluded from considering such material. In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also*, *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) (quoting *Cline*, 96 F.3d at 148).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148.  To satisfy the

materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988). Plaintiff bears the burden of making these showings. *See Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

Plaintiff has not requested that the Court remand this matter for consideration of this evidence. Plaintiff has, therefore, waived any such argument. *See, e.g., Porzillo v. Department of Health and Human Services*, 369 Fed. Appx. 123, 132 (Fed. Cir., Mar. 12, 2010) (claimant "waves any arguments that are not developed"); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 537 n.25 (10th Cir. 2000) (arguments "superficially" developed are waived); *Financial Resources Network, Inc. v. Brown & Brown, Inc.*, 2010 WL 4806902 at *30 n.29 (D. Mass., Nov. 18, 2010) (same).

## CONCLUSION

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**.

Dated:  September 24, 2015                                           /s/ Paul L. Maloney
                                                                    Paul L. Maloney
                                                                     United States District Judge